is asking to be sued in another country. Is that still the status of his... I know the briefs say he was awaiting sentencing or something. Is he still awaiting sentencing? Judge Barksdale, sentencing is in the foreseeable future. His conditions are alive as I stand here. There is no end in sight. It's an ongoing major investigation. And that's not disputed. When defendant suggested that we refile this case in Mexico, we immediately said, okay, wait. So you have been convicted of money laundering from Mexico. And we went through PACER and we found this series of orders that you referred to saying you cannot go to Mexico. Since then, defendant has offered this series of suggestions about how we might have a remote trial. There, first of all, defendant admits he doesn't know if, quote, whether his personal attendance, he must appear in person in Mexico or whether alternatives to personal appearance may be available. There was no expert testimony either as to availability or Mexican law. Most concerning, Your Honors, was the district court didn't ask these questions. Why are we bending over backwards to go around these orders instead of just trying the case here? The court did not allow us to ask these questions. We had a scheduling conference that lasted about two minutes. And we were cut off. And a few days later, that court was assigned a case with 96 defendants in which we appeared along with half of the Houston Bar. And a few days later from that, our case was dismissed. And so we concede that the judge in his order accurately, correctly, set forth the analytical framework for former nonconvenience. But he failed to resolve significant conflicts in the record. Your Honors, those are not my words. Those are the words of this court, another panel 25 years ago, addressing a virtually identical order from the same district judge. This court reversed the order, noting that it was, quote, brief. It was actually quite longer than our order. In fact, a few years before that, another panel had reversed an almost identical order. The first case I referred to was CTF v. Intercontinental. But prior to that, Judge Smith, in a painstaking opinion, in Beres v. Sulpicio in 1991, explained that this district judge would need to, quote, begin afresh his analysis of the former nonconvenience factors. And yet there was a third case. In your view, is that the appropriate remedy in this case to remand and require the district judge to go through the proper analysis? That's traditionally what the court has done. We believe that the whole motion was in bad faith and that you could proceed to rule on the issue. But I understand traditionally that you don't. Records sufficiently developed for us to do that? Absolutely. And just to add, the third case in this catalog is Raytheon v. HLH, and that was several years later. And at that point, in reversing an almost identical order by the same district judge, the panel noted that instead of expanding the analysis, it was now down to two paragraphs. Your Honors, we are down to one paragraph now. The district judge has similarly, in all the other cases, mixed the public and private factors and omitted factors and failed completely to balance or even cite any of the evidence on the record supporting trial in this forum, including these orders that we discussed from these other judges. Clearly, this judge, he doesn't like to apply these factors. But to affirm this order, it would vitiate these three previous opinions and 200 Fifth Circuit opinions that have adopted and affirmed the Gilbert factors for the last 70 years. I mean, if you could just, unless you want to argue something else, if you could just run through the various factors and explain to us why you think they weigh in for nonconvenience dismissal. Thank you, Judge Duncan. I'll try to be brief. There are 12 factors and prongs. They have the burden on all of them. And beginning at the top, there is the burden to show inadequate and available form. And in the brief we cited, there's an interesting case in the Eighth Circuit that addresses what happens when there's no evidence of an available form and there's just this consent, loan consent. And that's the Stryker case. And I would encourage the court to consider that. Two of the previous cases that this court has addressed with this judge, Barras and Raytheon, Judge Smith also said, you know, well, one of them said, we need not reach that issue. And the other said, well, it wouldn't solve the other Gulf problems anyway, but were, quote, skeptical that they could, that there was anything supporting in the level of sufficient detail, those two initial factors. Even though, you know, Mexico has great courts and we don't doubt that in almost all cases, but you just, this is so minimal. This is the extreme. And then I would just consolidate the most important of the next factors. And they kind of blend together, but access to proof and the compulsory witnesses and the costs of other witnesses, it's the live testimony. And Gulfy Oil has an applicable line that, phrase that applies especially to this case, to fix a place of trial at a point where litigators cannot compel personal attendance in person and may be forced to try cases on deposition would create a condition not satisfactory to litigants. And so it's, you have to look at our complaint. And we're suing this defendant individually. He is in both, especially in Mexican law, but in any trial, I mean, this is an oral contract. Examination of that witness is essential. There are two other people. Did you say Mexican law applies? No, Your Honor. This is absolutely a Texas law case. You just said Mexico law, under Mexico law. That's why I asked. That was a digression that I don't think was applicable. But thank you for asking that. And we were addressing the witness factors. The two other witnesses, FBI agents, there's no way that a Mexican judge, and this is based on what we know and judicial notice cited in the brief and everything, but they haven't put any evidence of any way that we could compel these FBI agents to testify in Mexico. And that's it. And this is the simplest case you can possibly have. It's a sworn account case in Texas, and it's just a bill, and that's attached to our complaint. So that's not really an issue. It's in Texas. And if I, you know, jury views don't matter, I'd like to skip and just address the public interest factor. And the most important one, and I'd like to provide some perspective about foreign nonconvenience in general. It is a way to curtail, you know, tort plaintiffs abusing our court system. But as the Second Circuit thoughtfully suggested in Irigori, it also can be used in the same way for form shopping by defendants. And in a contract case like this, as this court said in McLean, Texas has a strong interest in enforcing laws against Texas-based defendants. And so the fact that there are some flights in Mexico, just like in many other cases in this district, I think that this court put it best in the Byrd case in 1955. If they're major, just because there's major operations all over the world, far-flung, like many businesses in this district, the defendant surely can't complain that we are suing them for a contract at their headquarters where they're domiciled. And that is a bedrock assumption that we all rely on just economically, that courts in this district will enforce international contracts. And affirming this particular order would open the door to similar border hopping using these affiliates, shell corporations, on both sides of the border, to evade jurisdiction everywhere. This is my first argument. I would appreciate any questions that you might have at this point. It's such a simple case. I've covered the main issue. We were dismissed on a Rule 19 issue, which they provided no authority on. 100 years of Supreme Court cases has established that a third-party obligor to a contracted issue and a breach of contract case is not an indispensable party. And here, the district judge, as best we can understand, he said, quote, individual Mexican citizens include LACA MAX or indispensable parties. And we're not sure who that is. We haven't heard of them until this suit. But, you know, they're claiming, and the court described them as a speculative third-party contract. And it's just not, under a fair reading of Rule 19 and the Supreme Court precedent for 100 years, an indispensable party. And with that, I will yield. Thank you. Thank you. Hey, police court, counsel for your appellee. It may help for me to put the events of this case into context for you. And specifically, you've read in the briefs about this campaign for governorship of Tamaulipas, Mexico. The candidate was a gentleman, Baltazar Ochoa. And this gentleman is not a nobody. He's a somebody. He was honored by Nancy Pelosi in 2007 for distinguished border leader. He was the mayor of Matamoros, Mexico, a city of a half a million people. He was supposed to win this election. His political party, PRI, had not lost the election for the governorship of Tamaulipas in 86 years. All of this in the record? It is, Your Honor. They haven't lost the election in 86 years. Well, it seems to me all this is a defense that she might assert in a summary judgment motion. But we take the complaint as alleged. And this complaint says that there was an oral contract with Luis Carlos Castillo Cervantes. And so that may not be a good claim based on what you're saying. But looking at just the complaint as pled, what has that got to do with Form 9 convenes? What it has to do is this, Your Honor, is that Judge Hoyt correctly determined that this case ought to be brought in Mexico for the reasons that he listed in his very carefully written opinion. I mean, I don't think there's any question that he correctly analyzed the law. I think counsel has even told you that he didn't quarrel with that. Remember that this is not de novo review. It's an abuse of discretion where the judge's fact findings are entitled to deference. Okay, what's the clearly erroneous fact finding? He found that all the witnesses were in Mexico. The documents were in Mexico. He found that the events happened in Mexico. But he found that all the testimony would have to be translated from Spanish. Those are not clearly erroneous fact findings. Our client, may it please the Court, would be entitled to make a claim if this were brought under Rule 14. He would be entitled to make a claim against anybody that he claimed was either partially or completely liable for the claims that were made against him. And, of course, that factors into Rule 19. Judge Hoyt found in his opinion that there were people in Mexico, and he said including the Mexican corporation, but I would suggest to you that under your standard of review where you can affirm on any basis supported by the record, the Court can't find as the pleading support that a potential third party is this Baltimore Ochoa, either individually, certainly his campaign, and maybe even the political party. You've read that and tried to implement it. Absolutely, Your Honor, and that's on page 74 of your Record on Appeal. It says it specifically. In addition, the Baltimore Hinojosa Ochoa 2016 gubernatorial campaign would be a potential third party. Have you tried to implead him? Say, we want to join him? How, Your Honor? That's the whole problem, and that's what Judge Hoyt found. What jurisdiction would a U.S. court have either over Ochoa, over his political campaign, or the PRI party? What jurisdiction would a U.S. court have? Even the most creative pleading would not get you there. I mean, the Court would almost laugh and have to dismiss that there's absolutely no jurisdiction. But how can the Court afford complete relief in the absence of these parties who really ought to come in? Our client would have the right to say, Look, these... Just hypothetically, assuming that the plaintiff in this case prevailed and got a judgment against Mr. Castillo-Cervantes, Mr. Castillo looks like he could go into Mexico and say, you know, he owes this, not us. So have two separate lawsuits. In other words, they'd have to take a judgment over here against Castillo who would not be able to point to this other party or parties and tell a jury, if this case were tried to a jury, that, look, these services were provided for his benefit, not mine. Then taking the judgment... You could argue that to the jury, certainly. Put all those facts in front of the jury and say the contract was with him, not with me. Right. In other words, point to them as a responsible third party. But the problem with that is that you can't get a judgment against a responsible third party. You've got to bring that party into court in order to get a judgment against that party. I understand it, and correct me if I'm wrong, this ruling on Rule 12b-7, Rule 19, was sua sponte by the district judge. Is that correct? Your Honor, it was in our pleadings. I don't think our pleadings specifically had a heading that said that the court ought to dismiss because of an indispensable party. But it is in the pleadings, and it's in the motion to dismiss. I understand that you filed for a Rule 12b-6 dismissal, and in the Rule 12b-6 dismissal, you simply made reference to Rule 19. But, you know, your argument today, you would have thought this would have been the first thing you did in your form nonconvenience motion of not able to bring in all the liable parties. So I think there's quite a contrast between what you did in district court and what you're doing today now with us. Your Honor, I think the argument that there are responsible third parties is subsumed in the foreign nonconvenience analysis, and that's also what Judge Hoyt's finding was. And again, his findings are entitled to deference because it's not de novo review. Is his finding that the facts are, and this isn't a finding, it's just he stated this, that the facts are essentially undisputed? Do you agree with that? I do. I do agree with that. How are they undisputed? Well, Your Honor, what facts are disputed? There's no question that there was transportation services were furnished for the benefit of this candidate down in Mexico. There's no dispute that perhaps hundreds of flights in connection with this campaign happened in Mexico. I know the defense is saying, well, maybe three of these were flights to the United States. I don't know whether that's true or not. We never really got to the point with Discovery where they actually produced these flight manifests. They never produced the names of any of the people that were on these airplanes. And I think if they were to produce that, you'd see clearly that all of the people on these flights, all of these flights were these politicos that are... Is it undisputed that their version of it is there was a contract between Carlos Castillo Cervantes and Ray Jett? Your Honor, there is no contract. They say there is, so it's not undisputed. I don't... We absolutely disagree with that. They say that there was a conversation in 2014. Remember that the election didn't happen until June of 16, two years later. A contract to do what? What do they suggest that Castillo agreed to do? He agreed to give them his credit card, give them a blank check, and let them run up a $1.2 million bill flying politicos around Mexico? It just doesn't make any sense. What agreement did they think? There are disputed facts. Well, there certainly... I would say to the extent that the parties disagree about what the contract was, then I would agree with you that that's certainly disputed. That's quite fundamental with a contract claim. Well, it's an... They claim it's an oral contract, and they've tried to sue it as sued on a sworn account, but, look, that rule of civil procedure is not applicable in federal court, but this circuit has recognized that there's a common law sued on an account, and it's got the various elements. But the court never even reached the merits. Remember that Judge Hoyt did not grant summary judgment. He didn't dismiss for failure to state a claim. He simply told Riot, go to Mexico. That's where all the events happen, where the parties are, that's where all the documents are. That's all he said. How do you get Carlos Castillo Cervantes to Mexico for a trial? Well, Your Honor, this is going to be between two very capable district judges, Judge Hoyt and Judge Jack, who is the judge in the criminal case. They're both on the Southern District. They've got 50... You're going to let a criminal defendant cross the border into Mexico? Your Honor... I don't think I would do that if I were a judge. She might. I don't think I would. Well, she could if she wanted to. The first thing out of Judge Jack's mouth is going to be, well, why can't he appear via videoconferencing? I mean, after all, Judge Jack actually sentences people in criminal cases via videoconferencing. Now, I think she's going to say, she's going to tell the prosecutor, call the court up, I mean, let this guy go to the Mexican embassy either in Magallan or in Houston, which is Mexican-soiled. He's already consented to the jurisdiction of the Mexican court. Let him give his testimony via videoconferencing. He's going to testify in Spanish because he doesn't speak English well enough to testify in English. He testifies in Spanish. They transcribe it. The judge down in Mexico, one, has the transcript. It's in Spanish. And second, he can listen to the video. He can listen to Castillo speaking in Spanish. And their whole story is that it's grossly unfair to them that Castillo would appear via videoconferencing. But this is, it's comically inconsistent with the position they took in the case in San Antonio where Rideout successfully resisted going to San Antonio to give his deposition in the forfeiture case where they seized his Learjet at the San Antonio airport. The federal prosecutor wanted him to go to San Antonio. His whole story was that I can give my deposition via videoconferencing from Mexico. I assume, speaking of videoconferencing, you're aware that your supposed Rule 28J letter has been disallowed in this court. I saw that, Your Honor. That's regrettable. The transcript, the translation was $800, but it is what it is. I would certainly urge that the court... If you file a motion for judicial notice, it's just not a 28J letter. Yes, ma'am, I'll certainly do that if the court believes that it's important. But I think that document is important to this proceeding because the Supreme Court of Mexico is endorsing videoconferencing in Mexican federal criminal cases. That's like our U.S. Supreme Court formally endorsing videoconferences in criminal cases. Now it's circuit by circuit, including this circuit, but that would be like our Supreme Court endorsing it countrywide as the Supreme Court of Mexico has done. We don't know that they've done it. We don't have anything in this record that they've done it. I understand that, Your Honor. I'm saying hypothetically if the record were to reflect that, that's what it would reflect. But I think that... The only other thing I think that is of import in the case, Judge Hoyt did omit the return jurisdiction clause, and we've agreed in our brief that the circuit law indicates that a return jurisdiction clause should be inserted in a dismissal for forum nonconvenience. I don't know whether the circuit law would mandate that a return jurisdiction clause be inserted in a dismissal for failure to join an indispensable party. I just don't know that. Now, I couldn't find a case that held one way or the other. But I think that for purposes of trying to keep the case law consistent, it perhaps would be a good idea if the court would remand. But I would suggest to you that if you do remand, that it be a limited remand, that we not reopen this proceeding unless the court feels like additional findings are perhaps necessary. I just don't think they're going to do any better on remand. I think that on remand, if Judge Hoyt reopens the record, he's going to look at that mess in San Antonio and these inconsistent statements that they made, and the result in the case is going to be the same. He's going to say, just go to Mexico, and either Judge Hoyt and Judge Jack can get together and work out whatever logistical problems they are with respect to Castillo giving his testimony, that that should not be an impediment to the transfer of the case to Mexico where these events happened, where the documents are, where the parties are, where all the potential parties are. I don't have anything else. I'm actually going to concede time to you all unless you... You probably should know this. How does the Mexico court have jurisdiction over Mr. Castillo Cervantes? Two ways, Your Honor. First, he's a dual citizen of the United States and Mexico. I think I recall that. Okay. Right. They have that. And second, he's consented to the jurisdiction. In writing, he's consented, and that's part of your record on appeal. And third, he's actually agreed to waive any kind of a limitations defense in Mexico should there be a limitations problem down there, and that's an issue that this circuit has considered with a return jurisdiction clause. They expect that the defendant or potential defendant to actually waive limitations, and he's done that expressly. So there's really no impediment for a tribunal in Mexico fairly considering this. And if, look, if Riott is lucky enough to get a judgment against Castillo in Mexico, if the judge rejects Castillo's defenses and renders judgment, Riott brings the judgment back up here, he domesticates it, and he can do his best to try to collect it. So what's the injustice in all of this? I just don't see it. It would be an injustice for the case to be here where Castillo cannot bring in the people that he believes that he contends are responsible to pay the debt that was incurred by this political campaign down in Mexico. I mean, we have to review this for abuse of discretion, presumably. The district court is not required to make findings so that we at least know what the basis for his decision was? Your Honor, I think that the record is complete enough that the court can defer to his fact findings and grant them deference and find that his fact findings are not clearly erroneous and that his conclusions of law were correct. If the court thinks that there needs to be additional findings, that's your prerogative to remand, because the case has got to go back anyway for him to enter the return jurisdiction clause. But I would urge that we just not start from scratch in the district court. I mean, what we were hearing at counsel's argument earlier that all of a sudden the court dismissed, that's not true. This was extensively briefed on both sides. There were motions and replies and things like that that were filed with documents. Judge Hoyt had a very complete record in front of him when he decided, I think fairly and justly, go to Mexico. I mean, I'm not going to decide the case on the merits. Go to Mexico and litigate the case down there where this case ought to be brought. I would urge that the court affirm and, of course, if the court wants to remand, I would suggest that the remand be for a limited purpose only. And I'll give you, I think, six or seven minutes back and thank you for your afternoon. I'll just briefly correct a couple of items. Judge Jack has already denied him travel to Houston. There is no way she would allow him to travel to Mexico. And as far as the video conferencing option, which was sent to the court on Friday night, again, we ended up calling a bunch of lawyers over the weekend, Mexican state appellate judges, and nobody knows how that would work. It has never been done in a civil trial in Mexico. As far as he referred to a... That's not in the record either, is it? Judge Owen, that's correct. And... Well, there's certainly no findings about that. I mean, I'm reading the... Unless I'm missing something, the findings are two paragraphs. Is that right? In the order? Roughly two paragraphs. They're short paragraphs. One of the findings, I guess, is the evidence is also disputed that the Mexican forum is adequate for resolution of the party's disputes. What does that mean? The evidence is disputed. Is that a finding? Your Honor, when we received this order, we could not understand what it said. I mean, that's just a statement that the evidence is disputed. That's what it appears to be. Another interesting part of the order is Judge Barksdale reminded us it was sui sponte, and the judge appeared to have inserted that argument as part of the public interest factors. And... Just to briefly clarify, the previous case in which I filed a motion for protective order regarding an interview at the DOJ's office in San Antonio in a prior case, that's the exact opposite of the situation. That's whether a U.S. court under U.S. law would allow a video deposition. I have no idea what a Mexican court is going to do. We've been trying to get an answer in Mexico, and we would have liked to develop that and had expert testimony on this, but the judge beat us to it, and we were not able to do that. Lastly, he suggested that a return jurisdiction clause would be appropriate, and as Judge Smith and another panel in Raytheon explained, a return jurisdiction clause is not going to quote, will not solve the Gulf oil problems with this judge's order. That is an error, but for my client, tacking that on would not solve anything. It would be a catastrophic result. We would have five years of litigation in Mexico just to get an answer because this is such a novel concept. I believe it was Judge Owen asked an interesting question about how the Mexican court would get jurisdiction, and finally, I ran across one case, Nipon Coa in the Central District of California that actually examined the jurisdictional statute in Mexico and concluded that it wasn't sufficient evidence. They hadn't met their burden that a Mexican judge in a contract case would accept jurisdiction. Was it a dual citizen in that case? A dual citizen? I don't know the answer to that, Your Honor. Certainly, it was not a citizen who was a U.S. citizen involved in a case that was prohibited from traveling outside of the United States. What we've learned, there's all kinds of issues regarding that. You all may be familiar with these border shooting cases that have come here on Bonk where there was some many amicus briefs from Mexican jurists about whether Mexican courts would accept jurisdiction over the case involving the U.S. border agents. All I know, and all that's in the record, is that this is a very complicated situation. It would require, as in every other typical form of nonconvenience case, expert testimony on Mexican law. Time has expired. Thank you, Your Honor. Counsel, we're glad to have you here for your first argument.